UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANICE E. CLARK, on behalf of Z.J.C.,

                           **Plaintiff,**

               v.                                    7:13-CV-256
                                                       (FJS)

COMMISSIONER OF SOCIAL SECURITY,

                           **Defendant.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**CONBOY, McKAY,**                **LAWRENCE D. HASSELER, ESQ.**
**BACHMAN & KENDALL, LLP**
307 State Street
Carthage, New York 13619
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **PETER W. JEWETT, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Janice E. Clark brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the

Commissioner of Social Security (the "Commissioner"), denying her application for Supplemental Security Income ("SSI") on behalf of Z.J.C. *See generally* Dkt. No. 1. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 10, 11.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for SSI on Z.J.C.'s behalf on January 11, 2010, alleging Z.J.C.'s disability as of June 20, 2007. *See* Administrative Record ("AR") at 119, 159. The Social Security Administration denied the application on May 11, 2010. *See id.* at 57-63. Plaintiff timely filed a written request for a hearing, which was held telephonically before Administrative Law Judge John P. Ramos ("ALJ"). *See id.* at 15. Attorney Natasha Hill represented Z.J.C. at the hearing. *See id.* Plaintiff testified on Z.J.C.'s behalf. *See id.* at 19.

On August 15, 2011, the ALJ issued a twelve-page decision in which he made the following findings "[a]fter careful consideration of the entire record."

1) Z.J.C. was born on June 20, 2007, meaning he was an older infant at the time the application was filed and was a preschooler at the time the decision was issued.
2) Z.J.C. did not engage in substantial gainful activity at any time relevant to the decision.
3) Z.J.C. had the following severe impairments
    a) Speech disorder (not otherwise specified)
    b) Borderline intellectual functioning
    c) Attention deficit hyperactivity disorder
    d) A history of ear infections.
4) Z.J.C. did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5) Z.J.C. did not have an impairment or combination of impairments that functionally equaled the listings.
6) Z.J.C. was not disabled since January 11, 2010, the date his SSI application was filed.

*See* AR at 18, 28.

The ALJ reasoned that Z.J.C.'s impairments were severe because they "more than minimally" affected his ability to function. *See id.* With respect to his finding that Z.J.C. did not have an impairment or condition meeting or medically equaling one of the impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P, the ALJ reasoned that there was "no evidence that supports a finding that [Z.J.C.] has a marked[] limitation in either one or more of the appropriate age-group criteria as outlined in Listing 112.02(B)(2)." *See id.* He further supported his finding by noting that the record contained valid IQ scores of greater than 70. *See id.*

With respect to his finding that Z.J.C. did not have an impairment or combination of impairments that functionally equaled the listings, the ALJ undertook an eight-page analysis, in which he discussed each of six domains of function, including the following: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. *See* AR at 18-27. As a result of this analysis, he found that Z.J.C. suffered less than marked limitations with respect to each of the domains of function except moving about and manipulating objects, for which he found no limitation. *See id.*

The ALJ's decision became the Commissioner's final decision on January 4, 2013, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 1-4, 8. Plaintiff then commenced this action on March 7, 2013, filing a supporting brief on July 29, 2013. *See* Dkt Nos. 1, 10. Defendant filed a responsive brief on September 12, 2013, in which he incorporated Plaintiff's statement of facts. *See* Dkt. No. 11 at 4.

Plaintiff advances three arguments in support of her motion. First, Plaintiff argues that the Commissioner erred in finding that Z.J.C. was not entitled to a finding of presumptive disability under Listing 112.05. Second, she argues that the ALJ erroneously found that Z.J.C.'s

impairments were not functionally equivalent to a listed condition under 20 C.F.R. § 416.926a(a). Finally, Plaintiff argues that the ALJ erred by affording greater weight to professionals who examined Z.J.C. than to his teachers and to Plaintiff, who is his custodial great aunt. *See generally* Dkt. No. 10, Pl.'s Mem. of Law.

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "more than a mere scintilla" of evidence and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

The SSI program provides benefits to needy aged, blind, or disabled individuals who meet certain criteria. *See generally* 42 U.S.C. § 1381 *et seq*; *Colon v. Apfel*, 133 F. Supp. 2d 330, 336-42 (S.D.N.Y. 2001). The Social Security Administration has set forth a three-part test for determining whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). First, the claimant must not be engaging in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). Second, the claimant must suffer from a medically determinable severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.924(c). Finally, the claimant must suffer from an impairment that meets or medically equals those listed in Appendix 1 of 20 C.F.R. § 404, Subpart P ("Listings"). A claimant may also satisfy the third

step where the Commissioner finds that his or her impairment or impairments functionally equals one or more of those in the Listings. *See* 20 C.F.R. § 416.924(d). Any such disability must also meet a durational requirement. *See id.*

In this case, Plaintiff does not dispute the ALJ's findings with respect to the first two steps. Accordingly, the Court reviews the Commissioner's findings that Z.J.C. was not entitled to a finding of presumptive disability under Listing 112.05 and that Z.J.C.'s impairments were not functionally equivalent to a listed condition under 20 C.F.R. § 416.926a(a).

**B. Finding of no presumptive disability based on Listing 112.05**

One of the listed impartments the ALJ considered in reviewing Z.J.C.'s application was Listing 112.05, which describes the impairment of "Intellectual Disability." *See* AR at 18 (citing Listing 112.05). The Listing describes the impairment as "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." Listing 112.05. As Plaintiff correctly points out, this impairment may be demonstrated in a number of different ways. In particular, Plaintiff argues that Z.J.C. meets Listing 112.05(A), which provides that children aged 3 to 18 years be markedly impaired in two of the appropriate age-group criteria in paragraph (B)(2) of Listing 112.02:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
> d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, App. 1, § 112.02(B)(2).

Marked impairment in this context "means more than moderate but less than extreme . . . such as to interfere seriously with [the claimant's] ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." Listing 112.00(C). The regulations further provide that, "[w]hen standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction." *Id.* Additionally, with respect to the first factor, age-appropriate cognitive/communicative function, "[a] primary criterion for limited cognitive function is a valid verbal, performance, or full scale IQ of 70 or less." Listing 112.00(C)(2)(a).

> With respect to medically documenting such impairments,
>
> [t]he presence of a mental disorder in a child must be documented on the basis of reports from acceptable sources of medical evidence. Descriptions of functional limitations may be available from these sources, *either* in the form of standardized test results *or* in other medical findings supplied by the sources, or both . . . . *As necessary*, information from nonmedical sources, such as parents, should also be used to *supplement* the record of the child's functioning *to establish the consistency of the medical evidence* and longitudinality of impairment severity.

Listing 112.00(D)(1) (citation omitted) (emphasis added). IQ tests obtained before age seven are valid for one year if the tested IQ is 40 or above. *See* Listing 112.00(D)(10). Additionally, for young children, "programs of early intervention involving occupational,

physical, and speech therapists, nurses, social workers, and special educators, are a rich source of data." Listing 112.00(D)(3).

In his written decision, the ALJ "considered Listings 102.10, 112.02, 112.05, and 112.11." *See* AR at 18. He concluded, based on "the record and *in relation to the six domains discussed below* . . . [,] that there is no evidence that supports a finding that the claimant has a marked[] limitation in either one or more of the appropriate age-group criteria as outlined in Listing 112.02(B)(2)." *See* AR at 18 (emphasis added). The Court finds that substantial evidence supports the ALJ's functional equivalence findings for the reasons discussed below, *infra* Part III.C., as well as his finding of no presumed disability to the extent that he relied on valid age-appropriate standardized testing,[1] together with the reports of Z.J.C.'s early intervention caretakers and teachers. *See* Listing 112.00(D)(1), (D)(3).[2]

## C. Finding of no impairment functionally equivalent to a listed impairment

The third step of the disability analysis for children seeking SSI benefits entails the question of whether the claimant's impairment or combination of impairments functionally equals a listed impairment. *See generally* 20 C.F.R. § 416.926a. To meet the functional

---

[1] The ALJ relied partly upon the fact that "the record contains valid IQ scores greater than 70." *See* AR at 19. The particular IQ test the ALJ cited was conducted on April 29, 2010. *See* AR at 268-71. The ALJs' decision was dated August 15, 2011. *See* AR at 28. As noted, an IQ score of 40 or greater obtained before the age of seven is only valid for one year. *See* Listing 112.00(D)(10). Thus, although the ALJ erred to the extent that he relied on the April 29, 2010 IQ test in reaching his decision, the Court finds that there was substantial evidence to support his conclusions even without reference to the results of that test. *See infra* Part III.C.

[2] Moreover, to the extent that Plaintiff argues that Z.J.C.'s impairment also meets Listing 112.05(F), the Court's findings with respect to Listing 112.05(A) render any such argument academic. Listing 112.05(F) provides that a child meets the listing for intellectual disability when he meets the requirements of Listing 112.02(B)(2)(a), marked limitation in age-appropriate cognitive/communicative function, in addition to a physical or mental impairment imposing an additional and significant limitation of function.

equivalence standard, the claimant's impairments or combination of impairments must be "marked" in two domains of functioning or "extreme" in one domain. *See* 20 C.F.R. § 416.926a(a). "Marked" limitation in this context means serious interference with the claimant's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). For children of any age, birth to 18 years,

> we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. . . .

20 C.F.R. § 416.926a(e)(2)(iii) (internal citation omitted). "Extreme" limitation is similarly delineated to correspond to test scores in excess of three standard deviations from the mean on comprehensive standardized tests. *See* 20 C.F.R. § 416.926a(e)(3)(iii). However, "we will not rely on any test score alone. No single piece of information taken in isolation" can establish marked or extreme limitation in any given domain. *See* 20 C.F.R. §416.926a(e)(4)(i). "[W]e examine all the information we have in your case record about how your functioning is limited because of your impairment(s), and we compare your functioning to the typical function of children your age who do not have impairments." 20 C.F.R. § 416.926a(f)(1). The six domains of functioning are 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The first domain, acquiring and using information, considers how well the claimant learns and uses new information. *See* 20 C.F.R. § 416.926a(g). In general, the regulations provide that children aged three to six years should begin to learn and use readiness skills for reading, writing and mathematics, including, for example, listening to stories, rhyming words,

matching letters, counting, sorting shapes, building with blocks, painting, coloring, copying shapes, and using scissors. *See* 20 C.F.R. at § 416.926a(g)(2)(iii). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include a lack of understanding of words about space, size, or time, and difficulty recalling important things learned in school the previous day. *See* 20 C.F.R. § 416.926a(g)(3). In this domain, the ALJ found that Z.J.C. had a less than marked limitation. *See* AR at 23. Although a teacher noted that Z.J.C had problems related to problem solving and verbal reasoning, the ALJ relied on the facts that Z.J.C. was able to follow instructions during an intelligence evaluation and that he was able to complete a wooden puzzle and to imitate block designs or gestures. *See id.* The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

The second domain, attending and completing tasks, considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). In general, the regulations provide that children aged three to six years should be able to pay attention when spoken to directly, sustain attention to play and activities like putting puzzles together, and focus long enough to complete such tasks as dressing and feeding themselves. *See* 20 C.F.R. §416.926a(h)(2)(iii). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include being easily startled or distracted, being slow or failing to complete activities of interest, and requiring extra supervision to stay engaged in activities. *See* 20 C.F.R. §416.926a(h)(3)(i)-(v). In this domain, the ALJ found that Z.J.C. had a less than marked limitation. *See* AR at 23. Although the ALJ noted that one of Z.J.C.'s teachers reported that he had problems paying attention, he also noted that Z.J.C. was cooperative with appropriately focused eye contact during testing and that his attention was

adequate with prompting. *See* AR at 24. The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

The third domain, interacting and relating with others, considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). In general, the regulations provide that children aged three to six years should be able to socialize with children as well as adults, begin to prefer playmates their own age, use words instead of actions to express themselves, and play cooperatively with other children. *See* 20 C.F.R. § 416.926a(i)(2)(iii). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include avoiding or withdrawing from familiar people, difficulty playing games with rules, difficulty communicating with others, and difficulty speaking intelligibly. *See* 20 C.F.R. § 416.926a(i)(3)(i)-(v). In this domain, the ALJ found that Z.J.C. had a less than marked limitation. *See* AR at 25. He supported this finding by noting that Z.J.C. had participated in speech and language therapy and had scores of 80 in Receptive Language, 81 in Expressive Language, and 77 in spoken Language Quotient during a Speech-Language Evaluation. *See id.* He also considered evidence from Z.J.C.'s participation in early intervention programming, together with Plaintiff's testimony and other reports in the record. *See id.* Thus, the ALJ did not rely on the test results alone. *See* 20 C.F.R. § 416.926a(e)(4)(i). The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

The fourth domain, moving about and manipulating objects, considers "how you move your body from one place to another and how you move and manipulate things." 20 C.F.R. § 416.926a(j). In general, the regulations provide that children aged three to six years should be

able to run and walk with ease, climb stairs and playground equipment with little supervision, and complete more detailed motor tasks such as completing puzzles and building with an assortment of blocks. *See* 20 C.F.R. § 416.926a(j)(2)(iii). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include muscle weakness and joint stiffness, trouble climbing up and down stairs or trouble with balance, difficulty with coordinating body movements, and poor hand-eye coordination. *See* 20 C.F.R. § 416.926a(j)(3)(i)-(v). In this domain, the ALJ found that Z.J.C. had no limitations. *See* AR at 26. The ALJ supported this finding by considering multiple reports from Z.J.C.'s teachers as well as medical evaluations that he had "typical fine motor skills for his age" and normal strength and range of motion throughout his body with good postural and normal muscular tone. *See id.* The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

The fifth domain, caring for yourself, considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). In general, the regulations provide that children aged three to six years should be able to try to do more things for themselves to increase independence, including cooperating with caregivers but showing some independence and sense of identity. *See* 20 C.F.R. § 416.926a(k)(2)(iii). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include often using self-soothing activities, showing developmental regression, not dressing or bathing age-appropriately, and disturbance in eating or sleeping patterns. *See* 20 C.F.R. § 416.926a(k)(3)(i)-(v). In this domain, the ALJ found that Z.J.C. had

less than marked limitations. *See* AR at 27. The ALJ supported this finding by noting that "there is evidence that [Z.J.C.] is able to engage in dressing, drinking, and feeding himself." *See id.* He also considered evidence that Z.J.C. had problems sleeping and that he had not been toilet trained as of June, 2011. *See id.* The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

The sixth domain, health and physical well-being, considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on your functioning that we did not consider in paragraph (j) of this section." 20 C.F.R. § 416.926a(l). In general, the regulations provide that the Commissioner is to consider whether the claimant experiences symptoms such as physical effects of disorders that may vary in kind and intensity, medications taken and treatments received that may limit function, and whether illness is chronic with stable symptoms or episodic with worsening and improvement. *See* 20 C.F.R. § 416.926a(l)(1-3). Examples of limited function, which do not necessarily describe a marked or extreme limitation, include the following: generalized symptoms such as weakness, dizziness, agitation, or lethargy; somatic complaints such as seizures, headaches, nausea, headaches, or insomnia; limitations in physical functioning due to treatment such as multiple surgeries; exacerbations from one impairment or combination of impairments that interfere with physical functioning; or being medically fragile and needing intensive medical care to maintain health. *See* 20 C.F.R. § 416.926a(l)(4)(i)-(v). In this domain, the ALJ found that Z.J.C. had less than marked limitations. *See* AR at 27. The ALJ supported this finding by noting that, although Z.J.C. had multiple problems with recurring left-ear infections, the record "d[id] not document any additional physical impairment or that his ear infections significantly affect[ed] his health

and well-being . . . ." *See id.* The Court finds that there was substantial evidence in the record to support the ALJ's findings in this domain.

In sum, although the ALJ did not exhaustively discuss all of the evidence in the Administrative Record, the Court finds that his written decision was not so lacking in analysis as to be legally erroneous. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (instructing that an ALJ need not discuss every piece of evidence submitted (quotation omitted)). Thus, to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a conclusion that Z.J.C. is disabled, "whether there is substantial evidence supporting the appellant's view is not the question" on appeal. *Id.* (citations and footnote omitted). Accordingly, for the above-stated reasons, the Court finds that there was substantial evidence in the record to support the ALJ's findings in each of the six domains of functioning.

**D. ALJ's credibility determinations**

"'It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses . . . .'" *Cudworth v. Colvin*, 605 F. App'x 77, 78 (2d Cir. 2015) (quotation omitted). Plaintiff relies on *Colon v. Apfel*, 133 F. Supp. 2d 330 (S.D.N.Y. 2001), for the proposition that information from teachers and parents must be afforded more weight than the opinion of a one-time examiner under these circumstances. *See* Dkt. No. 10, Pl.'s Mem., at 22. However, that case is distinguishable from the instant case. In particular, the court's statement in *Colon* that observations and reports from teachers and nurses "'should always be sought for school age children'" because they "'establish a longitudinal picture that cannot be established through a single purchased examination'" quotes portions of the regulations that are inapplicable to this case. *See Colon*, 133 F. Supp. 2d at 340

(quoting Listing 112.00(C)(3) (discussing assessment of severity for children aged 6 to 12) and Listing 112.00(D)(5) (discussing "some cases where the treating sources lack expertise in dealing with mental disorders of children")).

In this case, Plaintiff was less than six years old at the time of the ALJ's decision. Additionally, there is no indication in the record—and Plaintiff does not argue—that Dr. Noia, the evaluator to whom Plaintiff argues the ALJ afforded too much weight, lacks experience in dealing with mental disorders in children. Thus, the Court concludes that the ALJ did not err in affording significant weight to Dr. Noia's opinion while finding Plaintiff's testimony not credible to the extent that it was inconsistent with other objective evidence in the record. *See* Listing 112.00(D)(1); *Cudworth*, 605 F. App'x at 78.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 10, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 11, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 14, 2016
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge